John Robert SEELYE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16564.

Court of Criminal Appeals of Oklahoma.

July 28, 1971.

Rehearing Denied Aug. 26, 1971.

Ungerman, Grabel, Ungerman & Leiter, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Robert H. Mitchell, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

John Robert Seelye, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County for the offense of Assault and Battery with a Dangerous Weapon; his punishment was fixed at five years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Suzanne Lindsey Shirkey testified that she married Dr. Shirkey in September of 1970; her husband was a surgeon, and she first met him on July 24, 1970. She was acquainted with the defendant, and could identify him. Mrs. Shirkey testified that she had been engaged to the defendant, but that the engagement ended around the 1st of April, 1970. The defendant owned a light blue Oldsmobile with a navy blue top, which had a telephone in it. In September, 1970, Mrs. Shirkey was living at 2516 East 28th Street, Tulsa, Oklahoma, and in the late evening hours of September 5, 1970, Dr. Shirkey and the witness's three children were with her. Mrs. Shirkey further testified that her house was equipped with a burglar alarm system, and that Seelye knew of this system. Dr. Shirkey did not leave her house until approximately a quarter of three on the morning of September 6, 1970. After he walked out of the house, she heard Dr. Shirkey yell. Mrs. Shirkey testified that she hit the burglar alarm button, opened the front door, and saw Dr. Shirkey standing on her front porch bleeding. The police arrived after she let Dr. Shirkey into her house.

The next witness for the State was Dr. Albert L. Shirkey, who testified that he was a chest surgeon in September of 1970, and that he was married to Mrs. Suzanne Shirkey. In August, 1970, he was living at the El Dorado Apartments behind Ranch Acres Medical Center, 31st and Harvard Streets, Tulsa, Oklahoma. He went to the house of Mrs. Shirkey around midnight on September 6, 1970, and he left her house at 3:00 o'clock in the morning. After he left the front porch of her house, and as he was putting his car key into the lock of his car which was parked on Mrs. Shirkey's driveway, he noticed a movement. Dr. Shirkey further testified that he turned and saw a Negro man bring a baseball bat down on his head, but that he could not identify his assailant. He was struck several times, and he tried to ward off the blows with his arm. When the assailants broke off their attack, he was able to scramble to the front door of Mrs. Shirkey's house, and after he gained entrance to her home, he cleaned himself, and was taken to St. John's Hospital for treatment, where he remained until the Sunday following September 6, 1970. Dr. Shirkey further testified that he did not know the defendant, Seelye. He described his injuries as a vascular skull fracture, a large laceration of the occiput, six teeth were knocked out, loss of the alveoli ridge, lye burn on the cornea of the right eye and the entire right side of his body, as well as multiple contusions and bruises.

Tom Cook testified that he was a private investigator, and that he first became acquainted with the defendant on August 17, 1970. On August 17, 1970, the defendant asked Cook if he could locate Dr. Shirkey's residence—the defendant contacted him three times concerning this request. Cook did, in fact, locate the residence some time between the 18th and the 24th of August, and he furnished the address of Dr. Shirkey to the defendant.

The next witness called by the State was Johnny Morris Warren, who testified that he knew Thelman James Price, also known as "Rock," and Ronald Allen French, and that he had been convicted of Burglary. Mr. Warren testified that he saw French and Price get into a blue Oldsmobile one night in August, 1970, and that the car had an aerial on the rear of it. A white man,

a colored lady, and a white lady were in the car, and the white man was driving. Warren could not recognize any of the occupants of the car, other than French and Price.

Ronald Allen French testified on behalf of the State that he had been convicted of Assault and Battery, and that he was the same Ronald Allen French charged as a co-defendant with the defendant and Timothy Bryant, Jr. His case had not yet been tried, and was still pending. French further testified that he knew Timothy Bryant, Thelman James Price and the defendant. He met the defendant one night on North Greenwood, and got into a light blue 1968 or 1969 Oldsmobile with a dark blue top, which was equipped with a telephone. Defendant wanted him to beat up a man for $100.00, but did not tell him the man's name. The defendant took the two men to the place where the alleged beating occurred, and told them about the alarms which were in the house and showed them the avenue approach. They then went to the El Dorado Apartments, where they were shown the parking place of the person whom they were allegedly supposed to beat up. A woman named Georgina, and a white woman, were with them. French further testified that he was taken back to Greenwood.

A couple of weeks later, he saw the defendant again on Greenwood, accompanied by the same people. On the night of September 6, 1970, he saw defendant on Greenwood with two white ladies, and he and Timothy Bryant went with them. They went to a Quick-Trip and purchased some Liquid Plumber and gloves with money provided by the white lady, and they purchased some stockings at another store. They went to the house where the alleged beating took place; French found a baseball bat, and he and Bryant hid in some hedges. Timothy Bryant had the Liquid Plumber, and they waited approximately three hours for the doctor to come out of the house. French testified that he let the air out of the right rear tire of the doctor's

car, and that when the doctor came out of the house, he hit him several times with the bat. He and Timothy Bryant ran away, but Bryant got caught at the house. The defendant planned the beating, drove them to the house where the alleged beating was to take place, and was going to pay them.

Timothy Bryant, Jr. testified that he was charged with defendant and French, and that his case was still pending. He had been convicted of attempted Armed Robbery and Second Degree Burglary, and he knew French and Price. Late in the evening of September 5, 1970, and early in the morning of September 6th, he was with French. A car containing French and a white man, whom he could not identify, and Georgina Sayles, pulled up on Greenwood. A white lady was also in the car. French asked him if he wanted to make $100.00 to beat up a fellow, and he said yes, and then he got into the car and they left. The white man said, "I just want you to put him in the hospital." Bryant further testified that the white lady bought some gloves at Git-N-Go, and they proceeded to the place where the alleged assault took place. French and Bryant got out of the car and layed in the bushes for 20 or 30 minutes. Then they went back to the car, and the white man said he should be coming out soon, and they went back to the house where French let the air out of the doctor's back tire. In about 15 or 20 minutes, a white man came out of the house and Ronald French started beating him with the bat; he hit the white man with a plastic container and kicked him a couple of times. The container had Draino in it. Following the attack, Bryant went around the corner, but the white man in the automobile had left, and Bryant hid in some bushes, but he got caught. French got away. Bryant said that the defendant had the same hair style as the man who drove the automobile on the night the alleged attack took place.

James Thelman Price, also known as "Little Rock," testified on behalf of the State that he had been convicted of Aiding and Abetting in the Sale of Marijuana,

Burglary, and Robbery by Force and Fear, and that he knew Timothy Bryant and Ronald French. Price identified the defendant and stated that he had met him. He first met the defendant in the 100 block of North Greenwood, in Tulsa, Oklahoma, when Georgina Sayles approached him and had a conversation with him. Following the conversation, they got into an Oldsmobile with a black bottom, and a vinyl top, which was equipped with a telephone, and the defendant and a white lady were also in the automobile. They then picked up Ronald French and stopped in the 1100 block of Greenwood, where defendant told them that there was a lady and a man whom he wanted beaten up. He was offered $100.00 to beat up the man, and they went to 2516 East 28th Street, and then to the El Rancho Apartments. Approximately a week later, Price talked to the defendant and Georgina about a gun, and was given $40.00 by someone in the car. On cross-examination, Price testified that he stayed two or three minutes at the house where the alleged beating was to take place to get the lay of the land. He was shown the front, driveway, backyard, fence and bushes.

The last witness called by the State was Robert Boston, who testified that he was a police officer with the City of Tulsa. In the evening of September 5th, and the early morning of September 6th, 1970, he was on duty in the southeast part of Tulsa as a K–9 Patrol Officer. He went to 2516 East 28th Street at 3:30 in the morning of September 6th, and within three or four minutes after he arrived, several other officers arrived. Officer Boston further testified that there was blood on the driveway beside one of the parked vehicles, and there was some type of liquid also on the driveway. When he rang the doorbell, Mrs. Shirkey asked him to identify himself, and upon learning that he was a police officer, she opened the door. Dr. Shirkey came to the door, and he was bleeding from the mouth and head, and his clothes were bloody. Officer Boston called the dispatcher on his radio, and requested an ambulance, and then he got his dog out of his car, put it on a leash, and went into the backyard. He found a ball bat lying by the gate, and identified a bat offered into evidence at the trial as the one found at Mrs. Shirkey's home. Officer Boston went through the gate into an adjacent yard and heard some brush rustling and the footsteps of a person running. He unleashed his dog, and commanded him to find the person. The dog caught a man, identified as Timothy Bryant, Jr., in some brush across Atlanta Street. The witness identified a broken bottle of Liquid Plumber and testified that the bottle was lying near one of the vehicles at the residence where Dr. Shirkey was injured.

The defendant cites three propositions which are as follows:

"(1.) The trial court committed reversible error in overruling the defendant's Motion to Quash the information;

(2.) The trial court committed reversible error in overruling the defendant's Demurrer to the State's evidence; and,

(3.) The trial court committed reversible error in not sustaining the defendant's Motion for New Trial."

The first proposition contends that the State did not introduce sufficient evidence at the Preliminary Hearing to corroborate the testimony of accomplices Ronald French and Timothy Bryant. The only evidence at the Preliminary Hearing to corroborate the testimony of the accomplices was that of Thelman Price. The defendant strongly urges that Price was an accomplice to the assault, and relies primarily on the recent case of Renfro v. State, Okl.Cr., 477 P.2d 92 (1970), to support this contention. We are of the opinion that the instant case is distinguishable from *Renfro*, supra. In *Renfro*, the witness, Batson, testified that he, the defendant, and two other persons met, planned, and cased the robbery. He decided the night before not to participate. After the

robbery, he received a one-fourth share of the proceeds. The case is further distinguishable, in that this Court had knowledge of conflicting testimony given by Batson in two additional cases.

In the instant case, Price was approached by the defendant and taken to the proposed scene, and after viewing the neighborhood, declined to accept the job. There was no evidence that Price aided or abetted the commission of the crime, or that he advised or encouraged its commission. To the contrary, he advised not committing it. In *Renfro,* supra, we stated in the second paragraph of the Syllabus:

"Where acts and conduct of witnesses are admitted, it is a question of law for the court to determine whether the witness is an accomplice of accused; on the other hand, where facts are disputed and reasonably susceptible of either interpretation such issue is for the jury."

At the conclusion of the Preliminary Hearing, the trial court made a specific ruling that Price was not an accomplice. (Tr., P.H. 149). We are of the opinion that the evidence supports the trial court's finding. We, therefore, find this proposition to be without merit.

■ The second proposition asserts that the trial court committed reversible error in overruling the defendant's Demurrer to the State's evidence. This assertion is based on the same argument as was presented in the first proposition, in addition to which he contends that the other witnesses at the trial did not corroborate the testimony of the accomplices. We are of the opinion that the trial court properly submitted the question as to whether Price was an accomplice to the jury. The trial court instructed the jury that if the evidence raises a reasonable doubt as to whether Price was an accomplice in the commission of the crime, that they should resolve such doubt in favor of the defendant and require independent corroborative evidence.

■ We are of the opinion that there was, in fact, other evidence of corroboration. Mrs. Shirkey's testimony established a motive for the offense. The defendant had knowledge of the alarm system of her house, which he imparted to Ronald French, and the type of automobile owned by the defendant. Tom Cook testified that the defendant contacted him on three occasions to locate the victim's address, which information was subsequently given to Ronald French by the defendant. Johnny Warren testified that he observed Price and French get into a car similar to that of the defendant, which was driven by a white man, and occupied by a colored lady and a white lady. This testimony verified the testimony of both Price and French as to their first meeting with the defendant. Officer Boston testified that he found the weapons that were used in the assault, which were identical to those weapons described by French and Bryant.

In the recent case of Nation v. State, Okl.Cr., 478 P.2d 974, we stated:

"It is the law in this state that an accomplice's testimony need not be corroborated as to every material point. If the accomplice is corroborated as to one material fact, or facts, by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all."

We, thus, find that the question as to whether Price was an accomplice was properly submitted to the jury. We further observe that there was sufficient corroboration of the testimony of the accomplices, disregarding the testimony of Price. We, therefore, find this proposition to be without merit.

The final proposition alleges that the trial court erred in not sustaining the defendant's Motion for a New Trial. This proposition does not contain new matter, but rather adopts the argument which authorities set forth in proposition one. We do not deem it necessary to restate the con-

clusions reached by this Court in proposition one.

In conclusion, we observe the record is free from any error which would justify modification or require reversal, that the punishment imposed is richly deserved. The judgment and sentence is accordingly affirmed.

NIX and BRETT, JJ., concur.